ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DROP BOX
AUG 20 2009
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | |
|---|---|
| John McIver<br>    Plaintiff, | )<br>)  Civil Action Number<br>)  4:08-CV-0740A<br>) |
| vs. | )<br>) |
| American Eagle Airlines, Inc.,<br>    Defendant | )<br>) |

# PLAINTIFF'S BRIEF IN OPPOSITION TO
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted this 20th day of August 2009.

ATTORNEYS FOR THE PLAINTIFF

Keith B. Romich
Georgia Bar No. 613970
Romich & Associates LLC
1091 Turnberry Circle
Greensboro, Georgia 30642
Telephone (706) 454-0108
Facsimile  (678) 268-3393
kromich@romichlaw.com

John M. Rodgers, Esq.
Bar Number 17177250
Rodgers Dupont LLP
409 W. 4th Street, Ste. 102
P.O. Box 2530
Weatherford, TX 76086
Telephone :  817-341-9300
Facsimile:    817-448-9917
jmrogers@r-law.com

# TABLE OF CONTENTS

AUTHORITIES

| | | |
|---|---|---:|
| I. | SUMMARY OF RESPONSE | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Background | 2 |
| | B. Material Facts Which Require Trial By Jury. | 3 |
| III. | ARGUMENT | 5 |
| | A. Summary Judgment Standard | 5 |
| | B. Defendant's Statute of Limitations Defense | 6 |
| | C. Defendant's Assertion That Denying McIver the Right To Take A Leave Of Absence Constitutes A Distinct Claim | 9 |
| | D. Defendant's Claim That There Is No Evidence Of Age Discrimination. | 11 |
| | E. Defendant Cannot Show That It Would Have Taken The Same Action Notwithstanding Its Discriminatory Intent. | 12 |
| IV. | CONCLUSION | 15 |

# AUTHORITIES

## Federal Cases

| Case | Page |
|---|---|
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) | 5 |
| Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858 (5th Cir. 1993) | 7 |
| Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583 (5th Cir. 1995) | |
| Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) | 5 |
| Cocke v. Merrill Lynch & Co., 817 F.2d 1559 (11th Cir.1987) | 9 |
| Conley v. Yellow Freight Sys., 521 F. Supp. 2d 713 (E.D. Tenn. 2007) | 7 |
| Connolly v. Mills Corp., 430 F. Supp. 2d 553 (E.D. Va. 2006) | 7 |
| Fierros v. Tex. Dep't of Health, 274 F.3d 187 (5th Cir. 2001) | 11 |
| Galvan v. Bexar County, TX., 785 F.2d 1298 (5th Cir. 1986) | 10 |
| Grayson v. K Mart Corp., 79 F.3d 1086 (11th Cir.1996) | 7 |
| Hornsby v. Conoco, 777 F.2d 243 (5th Cir. 1985) | 10 |
| Hyatt v. CNG Producing Co., 1992 U.S. Dist. LEXIS 17017 (E.D. La. Oct. 28, 1992) | 10 |
| Laxton v. Gap Inc., 333 F.3d 572 (5th Cir. 2003) | 11 |
| Manning v. Chevron Chem. Co. LLC, 332 F.3d 874 (5th Cir. Tex. 2003) | 10 |
| Matsushita Elec. Indus. Corp. v. Zenith Radio, 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) | 5 |
| Moore v. U.S. Dep't of Agric., 55 F.3d 991 (5th Cir. 1995) | 11 |
| Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333 (5th Cir. 2002) | 11 |
| Pearson v. Macon-Bibb County Hosp., 952 F.2d 1274 (11th Cir.1992) | 9 |
| Rhodes v. Guiberson Oil Tools, 927 F.2d 876 (5th Cir. La. 1991) | 9 |

SEC v. Recile, 10 F.3d 1093 (5th Cir. 1993) .................................................. 6

Shakelford v. Deloitte & Touche, LLP, 190 F.3d, $06 (5th Cir. 1999) .................................................. 12

Stewart v. Booker T. Washington Ins., 232 F.3d 844 (11th Cir. Ga. 2000) .................................................. 7

Teamsters v. United States, 431 U.S. 324, 363-66, 52 L.Ed 2d 396, 97 S. Ct. 1843 (1977) .................................................. 12

Thurman v. Sears, Roebuck & Co., 952 F.2d 128 (5th Cir. Tex. 1992) .................................................. 6

Tillison v. Trinity Valley Electric Cooperative Inc., 204 Fed. Appx. 346 (5th Cir. 2006) .................................................. 8

Wallace v. Methodist Hosp. Sys., 271 F.3d 212 (5th Cir. 2001) .................................................. 11

**Federal Statutes**

29 C.F.R. § 1601.12(b). .................................................. 10

29 C.F.R. § 1626.8(c) .................................................. 10

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| John McIver<br>    Plaintiff, | )<br>)<br>) | Civil Action Number<br>4:08-CV-0740A |
| vs. | )<br>) | |
| American Eagle Airlines, Inc.,<br>    Defendant | )<br>) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff submits this brief in support of his opposition to the Defendant's motion for summary judgment.

**I.   SUMMARY OF RESPONSE.**

In this case direct evidence establishes that the Defendant terminated Plaintiff McIver because of his age. McIver's supervisor met with him on December 1, 2005, and in the course a few minutes, notified him that he was be displaced from the department, told him that the company wanted him gone because of age, denied him the right to take a leave of absence in order to preserve his employment, and, told him that he needed to return his company property and leave. All because, " the company [was] becoming concerned about the number of instructors over the age 60."

The Defendant's overly simplistic statute of limitations arguments do not provide a basis for avoiding this liability. The Plaintiff did not have notice of the displacement until his supervisor told him that the mistaken notice would not be rescinded. The refusal to allow McIver to take a leave of absence cannot be separated from the decision to displace him and terminate his employment. The Defendant's affirmative defenses must fail.

II.  STATEMENT OF FACTS.

A.  **Background**

Plaintiff John McIver (McIver) began working for an American Eagle affiliate, Metro Airline, in February of 1988. McIver Dep. 102, Exh A, A10.[1] He began flying the Saab propeller airplane as a first officer and was promoted to captain. McIver Dep 102-103 Exh A, A11-12. McIver continued to fly the Saab until he entered the Training Department in January 1998. McIver Dep 103 Exh A, A12. While training in the Saab program, McIver attained qualifications in every primary area in addition to simulator check airman, line check airman, FACs, APD simulator, APD in the aircraft, advanced ground training (AGT), general emergency training and general emergency drills ((GET GED), specialty training,(SPC), captain's duties and responsibilities (DNR), initial and recurrent instructor academics and initial and recurrent check airman academics. McIver Dep 137, Exh A, A25.

In 2003 MacAlla approached McIver and asked him to apply for an opening in the Embraer (ERJ) jet training program. McIver Dep 131 (5-18), Exh A, A21. MacAlla stated that he needed an experienced check airman and because of McIver's experience on the Saab, he would not have to wait the normal time to become a check airman or APD. McIver Dep 131 (5-18) Exh A, A21  While many qualifications are equipment specific, the training standard for conducting an oral examination, simulator check, pre and post flight briefings and properly filling out paperwork is the same. McIver Dep 170 (20) 171 (4) Exh A, A36. The FAA views certification on different aircraft as one standard and will wave the timeframe for the waiting period for an APD qualification on a different aircraft. McIver Dep 171 (19-25) Exh A, A37. This contrasts with the common line check qualification which has specific observation

---

[1] References are to the document name. page and where applicable line, Exhibit letter and Appendix page.

Plaintiff's Brief In Opposition To                            2
Defendant's Motion For Summary Judgment

requirements which do not recur any faster if you previously held the qualification in any other aircraft. McIver Dep 172 (1-22); also 173 Exh A, A37-38.

When McIver entered the Embraer program, MacAlla told him that his seniority would remain the same, indicating that he would not be starting over in the Embraer program. McIver Dep 117-118 Exh A, A14.[2] During his interview with McAlla, McIver specifically asked McAlla about his seniority carry-over and was told his seniority in the Training Department would be counted. McIver Dep 133 (11) – 134 (7) Exh A, A22. MacAlla also told McIver that displacements would be in reverse seniority order. Id.

While an instructor in the Saab program, McIver was an assistant manager. McIver Dep 122, Exh A, A16. McIver worked with the program manager during displacements to create a list of names of persons who would be displaced. McIver Dep 123 – 124 Exh A, A17-18. The policy was to first offer instructors an opportunity to return to the flight line and after that it was last-in / first out. McIver Dep 124 (9-21) Exh A, A18.

B.   **Material Facts Which Require Trial By Jury.**

On October 14, 2005, American Eagle announced that there would be a displacement in the Embraer program. Letter dated 10/14/05, Exh, D, A84.

On November 17, 2009, MacAlla met with McIver in MacAlla's office. McIver Dep 60, Exh. A, A2. MacAlla handed him a displacement letter with his name on it and he said words to the effect, "Your name was not supposed to be on the list. This is a mistake. Stand firm." He said that he would take care of it. McIver Dep. 155-156, Exh A, A29.

---

[2] MacAlla indicates in his declaration that he told MacAlla he would be at risk when he left the Saab Department. That is not the way that he sold the position to McIver.. McIver Dep 119 (16) - 120 (4).

Plaintiff's Brief In Opposition To              3
Defendant's Motion For Summary Judgment

McIver did as instructed, did not look for alternatives, did not inquire into the displacement, and was under the impression the MacAlla would do exactly what he indicated he would do – correct the error. See McIver Dep. 68 Exh A, A5.

When McIver had not heard back from MacAlla by December 1, 2005, McIver met with MacAlla in his office. McIver Dep 156 (1)–159 (16) Exh A, A 32-33. MacAlla told McIver that he had been told that McIver's name would remain on the list and there was nothing MacAlla could do about it. McIver Dep. 156 (8-11) Exh A, A29. MacAlla indicated that some superior to him told him that McIver's name would stay on the list. McIver Dep 191 (12-16) Exh A, A40. McIver questioned how he could be displaced when MacAlla was telling him that he was one of the better instructors; how could this be a last- in /first-out basis. McIver Dep 156 (12-15) Exh A, A29.

MacAlla responded to the effect , "Frankly John, it is because of your age, period. The company is becoming more concerned about the number of instructors over the age of 60." McIver Dep. 156 (15-20) Exh A, A29.

McIver went on to ask MacAlla about taking a leave of absence, anticipating the company would re-staff in three or four months. McIver Dep. 158 (1-4) Exh A, A32. MacAlla responded to the effect, "You don't understand. That's not an option. You're over 60 and you're off the property." McIver Dep 156 (20-24) Exh A, A 30. MacAlla had with him an out-processing document and told McIver he would need to turn in "his stuff." McIver Dep 157 (1-6) Exh A, A31.

McIver's purpose in inquiring about taking a leave of absence was so that he would be available for re-staffing in the Embraer program or, if that did not happen, to be available for other positions within the company. McIver Dep 163 (17 -24), Exh. A35.

McIver had the right to take up to one hundred eighty (180) days personal leave. American Airline Dep/ (McCann Vol. I) 6(11)-7(10) A44-45[3]. There was no prohibition against taking a leave of absence in the face of a layoff. American Airline Dep (Hill) 51(6-19), Exh I, A127. During the six months following McIver's termination, American Eagle began re-staffing the Embraer program.

The company put out bids in April 2006 and M7cIver contacted MacAlla about that position. McIver Dep 70 (2)- 71 (19) Exh. A, A7__. MacAlla told him at that time that he was not permitted to hire instructors "off the street, period," Id, the result McIver attempted to avoid by seeking a leave of absence.

McIver was age 60 at the time of his termination. EEOC Charge, Exh G, A65.

## III.   ARGUMENT

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248. The court must draw all justifiable inferences in favor of the non-moving party. Id. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); Matsushita Elec. Indus. Corp. v. Zenith Radio, 475 U.S. 574, 587, 89 L. Ed. 2d 538,

---

[3] McCann testified as a corporate representative.

106 S. Ct. 1348 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

**B.**   **Defendant's Statute of Limitations Defense**

The Defendant argues that the McIver's claim is untimely because he received a displacement letter on November 17, 2005 during a meeting with MacAlla. The Defendant ignores the record evidence that MacAlla told McIver that it was a mistake and would be corrected. The Defendant ignores the record evidence that McIver had good reason to believe him. According to MacAlla, of the six instructors being involuntarily replaced, three were selected for "negative merit" and the other three were last to enter the Embraer program. The record evidence established that McIver he did not fit in either category. Moreover, displacement did not equate with termination. McIver was forced to retire on December 2, 2005.

"The limitations period for a suit for wrongful termination . . . will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of the termination." Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 133 (5th Cir. Tex. 1992). The Fifth Circuit adopted this rule for determining the date that the statute of limitations begins to run for filing a charge. The court must determine the date on which the plaintiff received unequivocal notice of his termination or when a reasonable person would have known that he was terminated. Id. In Thurman, the court found that the plaintiff was not terminated when he was told that his job had been eliminated, but instead when he was told that he no longer had a job. Id. at 136-137. The Fifth Circuit has applied Thurman in evaluating when the

statute of limitations began to run for filing a claim under the federal Age Discrimination in Employment Act. Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 590 (5th Cir. 1995).

A statement of an intent to discharge does constitute a final termination decision. Conley v. Yellow Freight Sys., 521 F. Supp. 2d 713, 721 (E.D. Tenn. 2007) (The notice was not understood as a final termination decision so the statute of limitations did not begin to run until six months later when the plaintiff was actually terminated).

The charge filing period also does not begin where a plaintiff is only told that she might be terminated if future contingencies occur. See Grayson v. K Mart Corp., 79 F.3d 1086, 1100 n. 19 (11th Cir.1996) (noting that the EEOC charge filing period does not begin to run until the employee receives "unequivocal notice of the adverse employment decision."). See also, Connolly v. Mills Corp., 430 F. Supp. 2d 553, 560 (E.D. Va. 2006) (no specific date on which the plaintiff was slated for termination).

When the termination is triggered by an event which has no specific date, then the limitations period does not begin until the happening of the event. Stewart v. Booker T. Washington Ins., 232 F.3d 844, 849-850 (11th Cir. Ga. 2000). "Beginning the charge-filing period any earlier would make little sense: to require a plaintiff to file a discriminatory termination charge with the EEOC prior to the receipt of notice of termination would be to require a filing prior to the occurrence of the discriminatory conduct, thereby charging the EEOC with responsibility for the arguably advisory task of investigating a hypothetical case of discrimination." Id.

Summary judgment must be denied where the there is a factual dispute concerning when notice was provided. See Stewart v. Booker T. Washington Ins., 232 F.3d 844, 849-850 (11th Cir. Ga. 2000).

In this case, the November 15, 2005 letter did put any recipient on notice that he or she would be terminated. Any instructor who was displaced had three options: return to the flight lime if qualified, take a different position in the company, or take a leave of absence in order to gain time to see if a suitable position cane available. A Training Department instructor was only forced to retire if they no longer were eligible to fly, did not apply for leave of absence and had not found any other employment within the company. American Eagle Dep (McCann vol II) 72 Exh. C, A65. These future contingencies negate the Defendant's argument that the time for filing a charge began running on November 17, 2005. See <u>Grayson v. K Mart Corp., supra.</u>

The displacement notice also did not give McIver notice that he would be removed from the training department. MacAlla expressly told McIver that there had been a mistake. McIver Dep. 60, Exh A, A2.

Here, the statute of limitations began to run when McIver met with MacAlla on December 1, 2005, and MacAlla told him that his name would not be removed from the list and that there was nothing that MacAlla could do. Prior to that time, there was no actionable violation. The maanger who the Defendant has identified as the person making the decision, said if would be changed. Had he done what he said he would do, or been permitted, there still would have been no cause of action. Had the Defendant not deprived MacAlla of his right to take a leave of absence on December 1, there would have been no termination.

McIver filed his charge alleging age discrimination on September 26, 2006. EEOC Charge, Exh. E, A-. The charge was filed within the 300-day filing period. See <u>Tillison v. Trinity Valley Electric Cooperative Inc.</u>, 204 Fed.Appx. 346 (5th Cir. 2006).

The Defendant's argument fails for the additional reason that when the employer conceals facts or misleads the plaintiff, the statute of limitations is tolled until the plaintiff

discovers the falsity of the statements. Rhodes v. Guiberson Oil Tools, 927 F.2d 876, 882 (5th Cir. La. 1991). In Rhodes, the Defendant misled the Plaintiff into believing that he was being laid off when in fact there was no elimination or combining of positions. The statute of limitations was tolled until the plaintiff discovered that he had been replaced by a younger person.

The charge filing period is equitably tolled when the employee's notice of termination states that the employer is pursuing positions for the employee within the company "until such time as it is or should be apparent to an employee with a reasonably prudent regard for his rights that the employer has ceased to actively pursue such a position." Cocke v. Merrill Lynch & Co., 817 F.2d 1559, 1561 (11th Cir.1987).

In this case, American Eagle's manager indicated that he would pursue correcting the mistake. On December 1, 2005, it became apparent to a reasonably prudent person that MacAlla was no going to correct the mistakel. On December 1, 2005, the statute of limitations began to run. Summary judgment must be denied. Pearson v. Macon-Bibb County Hosp., 952 F.2d 1274, 1279-80 (11th Cir.1992)(trial to determine the availability of equitable tolling when an employee was told she could resign, apply for a transfer or, if she refused those options, be terminated.).

C.  **Defendant's Assertion That Denying McIver the Right To Take A Leave Of Absence Constitutes A Distinct Claim.**

In this case, there was no need for McIver to file an amended charge in order to cure a defect or deficiency in his original charge. He was only terminated on December 1, 2005, as alleged, because the Defendant would not permit him to exercise the options available to him to remain employed. The amended charge was filed in a final effort to dissuade the EEOC investigator from closing the investigation without making any meaningful investigation.

See EEOC Records Exh. H.[4]

  Had there been a defect, however, EEOC regulations would have allowed McIver to amend his charge of discrimination to "cure technical defects or omissions" or to "clarify and amplify" the initial allegations. 29 C.F.R. § 1601.12(b). If the amendments involve acts that "relate to or grow out of the subject matter of the original charge," the amendments will "relate back to the date the charge was first received." Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 878 (5th Cir. Tex. 2003); see 29 C.F.R. § 1626.8(c). This rule has an important policy justification. One of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them." Id. at 879. Relation back does not apply where new theories of recovery are asserted such as attempting to add a race discrimination claim to a charge alleging sex discrimination. Id. See also, Galvan v. Bexar County, TX., 785 F.2d 1298, 1306 (5th Cir. 1986)(a second untimely EEOC charge alleging age discrimination related back to timely EEOC charge alleging discrimination on the basis of national origin when defendant clearly had actual notice during EEOC investigation and conciliation attempts of age discrimination claim; Hyatt v. CNG Producing Co., 1992 U.S. Dist. LEXIS 17017 (E.D. La. Oct. 28, 1992); Hornsby v. Conoco, 777 F.2d 243, 247 (5th Cir. 1985)( amendments to charge relate back to the date of the original charge when the amendments allege conduct "related to or growing out of the subject matter of the original charge.")

  In this case, it was American Eagle who responded to McIver's original charge by affirmatively asserting that McIver was not terminated because he was offered an opportunity to

---

[4] The EEOC investigator indicated that she would recommend McIver's charge for dismissal based upon the Defendant's Statement of Position and no investigation. Investigator letter dated 6/30/08, Exh G, A104-105. McIver's counsel made contacts and wrote letters requesting that the EEOC investigate the charge. The EEOC did not even address the statement by MacAlla and permitted the Defendant to evade the question when asked point blank if MacAlla told McIver he was being terminated because of his age. American Airlines Letter dated 8/27/08, page 3,Exh. G, A98.

Plaintiff's Brief In Opposition To     10
Defendant's Motion For Summary Judgment

take a leave of absence to search for another job and refused. See American Airlines' Statement of Position, page 2, Exh G, A102. McIver responded to that claim with a detailed response. See Counsel's letter to Investigator dated 9/3/08 Exh G, McIver also submitted an amended charge highlighting his opposition. Amended Charge dated 9/3/09, Exh. G, A94. The fact that the investigator decided to place a different number on the amended charge and declare it a new charge, does not change the nature of the filing.

D.      **Defendant's Claim That There Is No Evidence Of Age Discrimination.**

A discrimination claim can be established through either direct or circumstantial evidence. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). Where a plaintiff produces direct evidence of discrimination, he is "entitled to bypass the McDonnell Douglas burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability." Moore v. U.S. Dep't of Agric., 55 F.3d 991, 995 (5th Cir. 1995). "In such 'direct evidence' cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" Fierros v. Tex. Dep't of Health, 274 F.3d 187, 192 (5th Cir. 2001) (quoting Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)).

This court has held that "for comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002) (quoting Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222-25 (5th Cir. 2001).

Plaintiff's Brief In Opposition To                     11
Defendant's Motion For Summary Judgment

Here, all four factors are satisfied by MacAlla's statements to McIver on December 1, 2005. Plaintiff, who was 60 years old on December 1, 2005, was within the class of individuals who are subject to the protections of the Age Discrimination in Employment Act. McIver was age 60 at the time of his termination. EEOC Charge, Exh G, A65. MacAlla's statement to him that he was being displaced and forced to retire because of his age satisfies the first and fourth requirements. The statement was made at the same time that McIver was forced to retire. The proximity requirement is met. The statement was made by McIver's supervisor, the person who the Defendant has identified as the decision maker. The authority requirement is met.

E.  **Defendant Cannot Show That It Would Have Taken The Same Action Notwithstanding Its Discriminatory Intent.**

The Defendant attempts to deflect responsibility for denying McIver a leave of absence, by claiming that McIver was at fault for failing to submit a written request. The Defendant contends that McIver should have submitted a written request notwithstanding MacAlla's statement he could not have leave and needed to get off the property.

It is well-established that an employee is not required to commit futile gestures simply to perfect a claim. See Shackelford v. DeLoitte & Touche, LLP, 190 F.3d 398, 406 (5th Cir. Tex. 1999) (failure to apply for a position does not bar the plaintiff's claim if she can show that such an application would have been a futile gesture.); see also Teamsters v. United States, 431 U.S. 324, 363-66, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977).

According to the Collective Bargaining Agreement, McIver had the right to take a personal leave of absence. American Eagle (McCann V.I) 5-6 Exh. C, A43-44. If he had applied it should have been granted. Id., at 6 Exh. C., A44. He was permitted to take up to 180 days of personal leave. Id.

When McIver asked McAlla if he could take a leave of absence, the proper response was, "give it to me in writing and, we will evaluate it." American Eagle (McCann Dep. V.I.) 25, Exh. C, A63. Instead MacAlla responded to the effect, "You don't understand. That's not an option. You're over 60 and you're off the property." McIver Dep 156 (20-24) Exh A, A29.

There was no bona fide reason for denying McIver leave of absence. The resulting salary and benefit savings would have been no different whether the instructor over age 60 was displaced or took leave of absence. American Eagle Dep 11-12, 13-15, especially 16 (7-11), Exh. C, A49-54. The Collective Bargaining Agreement which addressed displacements would not require a person to be displaced rather than placed on leave of absence. Id. at 19, Exh, C, A57. The denial of leave simply precluded McIver from maintaining his qualifications while on leave as did other instructors who had gone back to the flight line temporarily. McIver Dep. 64; 80 (15) – 81 (22) Exh. A, A3.

In their brief, the Defendant produced tables and a lengthy discussion of the process by which the eight (8) instructors were identified for displacement in November 2008. But the story today is different than the story which MacAlla told in 2005.

In November 2005, McAlla met with his supervisor, Director of Training John Saady, to explain the reasons he selected certain instructors for displacement. See MacAlla Dep 85-88, Exh. C, A74-77. MacAlla told Saady that two of the instructors proffered (volunteered) to go back to the flight line, three were placed on the list due to negative merit, and that the final three, were the three last instructors into the program. Id.   He testified:

```
12  Q.  Okay. So with respect to the three of them,
13      you -- you said that they all fell in last in, first
14      out, meaning that they were the three last into the
15      program and, therefore, would be the first out?
16  A.  Yes.
```

    17    Q.  Did you tell him anything else?
    18    A.  Not that I can recall.

MacAlla Dep. 88, Exh. C, A77.  MacAlla did not mention extraordinary merit.  Consistent with this explanation, MacAlla told Brown and Johnson they were being displaced because they were last into the program.  MacAlla Dep. 92(20)-93(4), Exh C, A78-79.  MacAlla admits that he did not tell Saady that there were individuals being retained that did fit the last-in, first-out rule.  MacAlla Dep. 122, Exh C, 82.

On December 1, 2005, MacAlla told McIver that MacAlla responded to the effect, "Frankly John, it is because of your age, period. The company is becoming more concerned about the number of instructors over the age of 60." McIver Dep. 156 (15-20) Exh A, A30.

The Defendant's Statement of Position filed with the EEOC made no mention of differentiating extraordinary qualifications or experience. Exh. G, A101-103.

Between November 2008 and February 2009, McAlla and McIver had discussions regarding his employment and lawsuit.  McIver Dep 154 –155, Exh A, A28-29.  McIver asked McAlla during one of the meetings about his statement that he was terminated because of his age and MacAlla did not deny it but simply said he could not recall making the statement.  McIver Dep 155 (3-9), Exh. A, A29.  At a meeting with McIver in the January to February 2009 time frame, McIver who pointed out that the displacements were not last-in, first-out.  McIver Aff. ¶2, Exh E, A85.  McIver mentioned Hefley and Riney, to which MacAlla responded, "those were mistakes. Id.

MacAlla tells a much different story now but its one which is too tortured to be taken seriously.  On the one hand, there was McIver and all his previous training and successful FAA certifications.  Admittedly, once the instructor has learned how to conduct training in a particular and demonstrated proficiency, the change from one plane to another was minor.  MacAlla Dep.

43(9-14), Exh. C, A69. The critical skill was the training. There is "not a whole lot of difference" when an instructor transferred from the Embraer to the Saab. MacAlla Dep. 42(12-18), Exh. C, A68. Even the APD position for the Saab and Embraer, "is basically the same job other than it's a different piece of equipment," MacAlla Dep. 44(5-17), Exh, C, A70, and the instructor would already have the necessary basic training and experience. Id.

On the other hand, there's Hefley.

Hefley had less "quals" than McIver and came into the department after him. The Defendant claims that Hefly had, however, extraordinary merit because he was instrumental in developing Mexican "quals" and having significant experience in that area. The Defendant asserts that this, and the fact that he once held, but no longer held the line check airman demonstrated "extraordinary" merit. Extraordinary?

"Mexico quals" were dropped from the "Quals List" in 2005 because 'everyone' had the qualification that needed it so there was no one left to train. MacAlla Dep 126 -127, Exh. B, A 'Everyone' was *all* the 'line check' airman appearing on the Embraer 'Quals' List. Id. They *all* had Mexico experience. Id. They also had the line check 'qual' and Hefley did not.

The fact is, management above MacAlla dictated who could or would be placed on a displacement list. MacAlla stated that "tt was very obvious to me, the way it was done, that there were certain people that were protected." MacAlla Dep 70(16-18), Exh. C, A71.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully submits the Defendant's motion should be denied.

Respectfully submitted this 20th day of August 2009.

For the Plaintiff

*[signature]*

Keith B. Romich
Georgia Bar No. 613970
Romich & Associates LLC
1091 Turnberry Circle
Greensboro, Georgia 30642
Telephone (706) 454-0108
Facsimile  (678) 268-3393
kromich@romichlaw.com

John M. Rodgers, Esq.
Bar Number 17177250
Rodgers Dupont LLP
409 W. 4th Street, Ste. 102
P.O. Box 2530
Weatherford, TX 76086
Telephone : 817-341-9300
Facsimile:    817-448-9917
jmrogers@r-law.com

Certificate of Service.  The undersigned certifies that he served the foregoing by certified mail to Russell D. Cawyer, Paige P. Biggs, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102 on August 20, 2009.

*[signature]*

Keith B. Romich